NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA MEYLER, : | |
| : | |
| Plaintiff, : | Civ. No. 04-4669 (GEB) |
| : | |
| v. : | **MEMORANDUM OPINION** |
| : | |
| JO ANN B. BARNHART, : | |
| Commissioner of Social Security, : | |
| : | |
| Defendant. : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the appeal of Plaintiff Patricia Meyler ("Plaintiff") from the Commissioner of Social Security's final decision that Plaintiff was not entitled to supplemental security income under the Social Security Act ("the Act"). This Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78, will deny Plaintiff's appeal.

**I.  BACKGROUND**

On September 6, 2001, Plaintiff filed an application for supplemental security income under Title XVI of the Act, alleging disability as of January 1, 1996. R. at 65-67. On January 7, 2002, the Social Security Administration denied Plaintiff's claim. R. at 41-46. A request for reconsideration of this decision was denied on July 31, 2002. R. at 51-54. On or about August 14, 2002, Plaintiff filed a Request for Hearing by Administrative Law Judge. R. at 55. On February 27, 2003, Administrative Law Judge ("ALJ") Richard L. DeSteno conducted a hearing

to determine whether Plaintiff was disabled and thus entitled to benefits. R. at 23-40.

During questioning by the ALJ, Plaintiff testified that she has not worked in the last fifteen years. R. at 27. Plaintiff testified that she filed for supplemental security income ("SSI") because of panic attacks and arthritis in her legs, left foot, right arm, and right hand. R. at 27-28. Plaintiff also testified that her current medication did not control her panic attacks. R. at 28. Plaintiff further testified that she lived, for the past eight years, in an apartment with the father of her deceased friend. R. at. 29. Plaintiff testified that she spent her time cooking, cleaning, watching television for about five hours a day, and doing laundry. R. at 29-30. Plaintiff testified that she was able to do the laundry on her own. R. at 30.

Plaintiff testified that she currently uses Methadone for a previous heroine addiction. R. at 30-31. Plaintiff further testified that she has not used street drugs in years. R. at 31. Plaintiff further testified that she could not focus on any one thing, but that she could do simple things. R. at 32. Plaintiff also testified that her feelings of panic arose as a result of many things, including being around people and life in general. R. at 32-33.

Plaintiff's representative testified that Plaintiff attended counseling sessions two or three times a month since October 22, 2001. R. at 33. Plaintiff's representative also testified that Plaintiff visited a psychiatrist monthly for depression and panic attacks with agoraphobia. R. at 33. Plaintiff's representative further testified that Dr. Luis Zeiguer filed a report indicating that Plaintiff had panic disorder triggered by exposure to crowds and that she occasionally experienced panic attacks at home. R. at 33-34. Plaintiff's representative also testified that Dr. Michael Block filed a report stating that Plaintiff's diagnosis was major depression, bronchial asthma, degenerative osteoarthritis, and epic gastric distress. R. at 34.

Plaintiff's friend of twenty-two years, Mr. Edward Henneberry, testified that Plaintiff has

arthritis and a breathing problem.  R. at 34-35.  Mr. Henneberry further testified that he and his wife took Plaintiff on a shopping trip, during which Mr. Henneberry lost track of Plaintiff's whereabouts for about eight minutes and subsequently found her crying in the corridor.  R. at 35.  Mr. Henneberry also testified that he watched Plaintiff cook her own food and make her own purchases.  R. at 35.  Mr. Henneberry further testified that Plaintiff is a "nervous wreck," but could still manage to do work such as putting things in a box.  R. at 36.  Mr. Henneberry also testified that Plaintiff cannot remain confined in one spot and basically has claustrophobia.  Finally, Mr. Henneberry testified that Plaintiff is on welfare and "doesn't have anything."  R. at 36.

Upon reexamination by the ALJ, Plaintiff testified that she visits Dr. Shamma for asthma and breathing problems every two months.  R. at 38-39.  Plaintiff further testified that she had visited Dr. Shamma for the prior two years.  R. at 38.  Plaintiff's representative testified that Dr. Shamma prescribed Celebrex for Plaintiff as pain medication.  R. at 38.  Plaintiff's representative further testified that she contacted Dr. Shamma but was told by someone in the office that there was nothing on record regarding Plaintiff.  R. at 37.

On May 12, 2003, the ALJ determined that Plaintiff is not disabled within the meaning of the Act.  R. at 12-22.  The ALJ's opinion summarized all of the evidence in the record, which included the testimony at the hearing.  R. at 16-22.  The ALJ noted that Dr. Zeiguer, in November 2001, conducted a mental status examination on Plaintiff.  R. at 16.  Dr. Zeiguer found that Plaintiff suffered panic disorder triggered by exposure to crowds and occasionally experienced this disorder at home.  Id.  However, the doctor also found that Plaintiff possessed average intelligence, adequate judgment, and logical thoughts.  Id.

The ALJ reported that Dr. Anthony Cincotta, in November 2001, performed a physical

examination on Plaintiff. Id. Dr. Cincotta observed no edema of Plaintiff's wrists or ankles and noted that Plaintiff offered no major complaints. Id. Plaintiff told Dr. Cincotta that she occupies her time watching television, writing, cooking, cleaning, shopping, doing the laundry, and making the beds. Id.

The ALJ also noted that Plaintiff attended Irving Counseling Center for psychiatric medication and counseling sessions. R. at 17. Dr. Adrien Coblentz, the evaluating physician for this center, found that Plaintiff's speech was basically logical, coherent, and relevant. Id. The doctor reported that Plaintiff's memory appeared to be intact and that her sensorium was clear. The doctor concluded that Plaintiff experienced panic disorder with agoraphobia. Id. Dr. Coblentz commenced a prescription of Prozac, which was subsequently enhanced with Trazodone. Id. In February 2002, Plaintiff reported that her medication was helpful. Id. After becoming more depressed in March 2002, Plaintiff had her Trazodone discontinued but began a treatment of Seroquel and Remeron. Id.

The ALJ also noted that Dr. Block, in July 2002, performed a mental status examination on Plaintiff. Id. The doctor found that Plaintiff's speech was coherent and goal-directed. Id. Although the doctor concluded that Plaintiff suffered from major depression, he reported that Plaintiff was compliant, cooperative, and able to comprehend. Id. Dr. Block further found that Plaintiff's judgment was intact, her insight was adequate, and she was competent to handle her own funds. Id.

The ALJ then paraphrased the testimony that Plaintiff and Mr. Henneberry presented at the hearing. R. at 17-18. While the ALJ acknowledged that Plaintiff suffers from severe depression and anxiety, the ALJ also concluded that these impairments were not severe enough to meet or medically equal any of the impairments in the Listing of Impairments. R. at 18.

Based upon physical examinations by Drs. Cincotta and Agarwal, the ALJ concluded that Plaintiff failed to demonstrate a medically determinable physical impairment. Id. Furthermore, the ALJ determined that the physical examination by Dr. Cincotta documented Plaintiff's full motor strength in all extremities. R. at 19. The ALJ concluded that the evidence in the record does not show the existence of any exertional impairment. Id.

The ALJ determined that the mental examinations of Drs. Zeiguer and Block, while substantiating depressive disorder and anxiety disorder, nonetheless demonstrate that Plaintiff can perform simple tasks. Id. These examinations, according to the ALJ, document that Plaintiff has full orientation and alertness, adequate concentration and memory, and intact judgment and insight. Id. The ALJ referenced the progress notes from the Irvington Counseling Center, noting that Plaintiff felt that her medication was helpful in treating her condition. Id.

The ALJ, after reviewing the physical and mental examinations on record, concluded that Plaintiff has retained the residual functional capacity to perform work involving lifting and carrying objecting objects weighing over 100 pounds; frequently lifting and carrying objects weighing over 50 pounds; standing, walking, and sitting up to six hours in an eight-hour day; pushing and pulling arm and leg controls; and very heavy work involving no greater than simple tasks. Id.

Plaintiff's subjective assertions regarding physical and mental impairments, according to the ALJ, are not commensurate with the objective medical documentation. R. at 19. Furthermore, the ALJ noted that marked inconsistencies in the record regarding Plaintiff's activities of daily living and prior drug abuse raise questions regarding Plaintiff's credibility. R. at 19-20. Plaintiff's activities of daily living indicate that she can independently care for herself, which includes doing laundry, cooking, cleaning, shopping, making beds, and taking public

5

transit.  R. at 20.

The ALJ then made the following findings of fact and conclusions of law: 1) Plaintiff has not engaged in substantial gainful activity since her application date; 2) Plaintiff has depression and anxiety, impairments considered "severe" based upon requirements of the regulations, but no medically determinable impairments have been established relating to Plaintiff's swollen legs or wrists; 3) Plaintiff's severe impairments do not meet or medically equal any of the listed impairments in the regulations; 4) Plaintiff's allegations regarding her limitations lack credibility due to Plaintiff's inconsistent reports of daily activities and drug abuse; 5) all of the medical opinions in the record have been considered regarding the severity of Plaintiff's impairments; 6) Plaintiff has retained the residual functional capacity for very heavy work involving no greater than simple tasks; 7) Plaintiff has no past relevant work; 8) Plaintiff is now an individual closely approaching advanced age; 9) Plaintiff has a high school education; 10) there are a significant number of jobs in the national economy, based upon Medical-Vocational Rule 204.00 and Social Security Rulings 85-15 and 83-10, that Plaintiff can perform; 11) Plaintiff has not been under a "disability," as defined in the Act and regulations, at any time though the date of the decision. R. at 21-22.

On July 1, 2003, Plaintiff requested that the Appeals Council review the ALJ's decision. R. at 10.  The Appeals Council denied the request on July 27, 2003.  R. at 3-5.  Plaintiff then filed the instant civil action with this Court, seeking review of the Social Security Administration's denial of disability benefits.

## II. DISCUSSION

      A.  <u>Standard of Review for Social Security Appeals</u>

The Commissioner's decisions as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." 42 U.S.C. § 405(g); <u>Knepp v. Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means more than a "mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999) (quoting <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001) (citing <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999)).

The Third Circuit has made it clear "that determination of the existence <u>vel non</u> of substantial evidence is <u>not</u> merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983) (emphasis in original). The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits. <u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978) (internal citation omitted). As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review. <u>Fargnoli</u>, 247 F.3d at 42. Nevertheless, the district court is not "empowered to weight the evidence or substitute its conclusions for those of the fact-finder." <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing <u>Early v. Heckler</u>, 743 F.2d 1002, 1007 (3d Cir. 1984)).

B. <u>Standard for Awarding Benefits</u>

A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirements. A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability. 20 C.F.R. § 404.1520 (2005). In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is working and the work is a substantial gainful activity, her application for disability benefits is automatically denied. <u>Id.</u> If the claimant is not employed the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). A claimant who does not have a "severe impairment" is not disabled. <u>Id.</u> Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1 of this subpart ("the Listing"). 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is conclusively presumed to be disabled, and the evaluation ends. <u>Id.</u>; 20 C.F.R. §

8

404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functional capacity" or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past ("past relevant work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is found capable of performing her previous work, the claimant is not disabled.  Id.  If the claimant is not longer able to perform her prior line of work, the evaluation must continue to the last step.  The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  The ALJ must consider the RFC assessment, together with claimant's age, education, and past work experience.  20 C.F.R. § 404.1520(g).  Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing her past work or some other type of work in the national economy because of her impairments.

The application of standards involves shifting burdens of proof.  The claimant has the burden of demonstrating both steps one and two, i.e., and absence of present employment and the existence of a medically severe impairment.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  If the claimant is unable to meet this burden, the process ends, and the claimant does not receive benefits.  Id.  If the claimant carries these burdens and demonstrates that the impairments meet or equal those within the Listing, the claimant has satisfied her burden of proof and is automatically entitled to benefits.  Id.  If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents her from performing her past work."  Id.  Thus, it is the

9

claimant's duty to offer evidence of the physical and mental demands of past work and explain why she is unable to perform such work.  If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  Id.  The step five analysis "can be quite fact specific."  Burnett v. Commissioner, 220 F.3d 112, 126 (3d Cir. 2000).

        C.  The ALJ's Decision was Based Upon Substantial Evidence in the Record

In her appeal, Plaintiff raises three arguments.  First, Plaintiff asserts that the ALJ made no "reasoned, articulated finding" for the third step of the sequential evaluation.  Pl.'s Br. at 10.  However, the ALJ refers to medical listings 12.04 for Plaintiff's depression and 12.06 for Plaintiff's anxiety.  R. at 19; see 20 C.F.R. § Part 404, Subpt. P, App. 1, 12.04, 12.06.  The ALJ then determined that the conditions of Plaintiff "result in no more than slight limitations in activities of daily living, social functioning, and maintaining concentration, persistence and pace."  R. at 19.  Additionally, the ALJ found that Plaintiff remains able to independently perform numerous chores.  R. at 20.  As such, the ALJ explicitly references requirements in sections 12.04 and 12.06 of the regulations.  20 C.F.R. § Part 404, Subpt. P, App. 1, 12.04, 12.06.  Plaintiff's assertion that the "ALJ did not identify the specific listing [or] group of listings he utilized for comparison" is without merit.  Pl.'s Br. at 12.

Substantial evidence existed for the ALJ to determine that Plaintiff did not meet the requirements in sections 12.04 and 12.06 of the regulations.  The ALJ references the physical examination reports of Drs. Cincotta and Argarwal in his decision.  R. at 16-17, 19.  These reports do not corroborate Plaintiff's complaints of arthritis at the ALJ's administrative hearing.  See R. at 27-28.  The notes of Dr. Agarwal apparently indicate no major physical problems within the "objective" report sections.  R. at 104-11.  Dr. Cincotta noted that Plaintiff

had "no major complaints" and that the "examination was within normal limits." R. at 117-18. Accordingly, the ALJ had substantial evidence to conclude that Plaintiff suffered from no medically determinable physical impairment within the meaning of the Act.

The ALJ also references the mental examination reports of Drs. Zeiguer and Block along with the progress notes and psychiatric evaluation report from the Irvington Counseling Center. R. at 16-20. The ALJ concluded, after reviewing these reports and notes, that Plaintiff suffers "severe" depression and anxiety that could significantly interfere with work-related activity performance. R. at 20. Plaintiff's argument that the ALJ found Plaintiff "to suffer only a mild psychiatric impairment" is incorrect. Pl.'s Br. at 21. However, while acknowledging the severe nature of Plaintiff's depression and anxiety, the ALJ determined that Plaintiff maintained the ability to perform work existing in significant numbers in the national economy. R. at 20.

Secondly, Plaintiff argues that the ALJ erred at step five of the sequential evaluation. Pl.'s Br. at 24. The burden shifts to the Social Security Administration to demonstrate that Plaintiff can perform a job existing in significant numbers in the national economy that is consistent with Plaintiff's residual functional capacity, age, education, and work experience. Id.; 20 C.F.R. § 404.1520(g). Despite Plaintiff's mental impairments, and considering that Plaintiff suffered from no medically determinable exertional impairment, the ALJ concluded that Plaintiff maintained the ability to do unskilled work involving simple duties. R. at 20-21. The progress notes from the Irvington Counseling Center, as referenced by the ALJ, R. at 19, indicate that medication provides assistance to Plaintiff for her mental impairments. R. at 149. In addition, the psychiatric evaluation at the Irvington Counseling Center, conducted by Dr. Coblentz and referenced by the ALJ, R. at 17, found that medication for Plaintiff proved to be "helpful." R. at 154. Rather than "reject" the psychiatric information from Irvington Counseling Center, as

claimed by Plaintiff, Pl.'s Br. at 21, the ALJ apparently considered this information because he referenced it in his decision.  See R. at 17, 19.

The mental examination reports of Drs. Zeiguer and Block, as concluded by the ALJ, indicate that Plaintiff has "full orientation and alertness, adequate concentration and memory, and intact judgment and insight."  R. at 19.  These reports provide substantial evidence for this conclusion.  See R. at 113-14, 158-59.  Dr. Zeiguer noted that Plaintiff's "thoughts were logical" and that her "[c]oncentration, orientation and memory were adequate for the interview purposes."  R. at 114.  Dr. Zeiguer also found that Plaintiff's insight and judgment were adequate.  Id.  Dr. Block determined that Plaintiff's "speech was coherent and goal directed" and that she was "compliant, cooperative, and able to comprehend."  R. at 158.

The ALJ, in determining that Plaintiff can perform unskilled work involving simple duties, assessed the impact of Plaintiff's mental impairments upon factors such as her ability to understand, carry out and remember instructions, and her ability to respond appropriately to supervisors, co-workers, and work stresses in a normal work setting.  20 C.F.R. § 416.945(c).  In making this assessment, the ALJ considered it significant that Plaintiff was "independent in all manners of self-care," including taking public transit, doing laundry, cooking, cleaning, shopping, and making beds.  R. at 20.  The ALJ also found it significant that medication provides Plaintiff with assistance and that Plaintiff has never been psychiatrically hospitalized.  R. at 19.  The ALJ reasonably concluded that the objective medical documentation, both mental and physical, does not substantiate Plaintiff's subjective complaints.  Id.

Furthermore, the ALJ determined that Plaintiff lacks credibility because inconsistencies arose regarding Plaintiff's reports of daily living activity and previous drug use.  R. at 19-20.  Contrary to Plaintiff's assertion, the ALJ did not label Plaintiff a "liar."  Pl.'s Br. at 20.  These

types of credibility determinations are not "obscure" or "ridiculous," Pl.'s Br. at 16, but rather, are a necessary part of the ALJ's discretion. Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

Lastly, Plaintiff argues that the ALJ should have issued a subpoena to obtain Plaintiff's medical information from Dr. Shamma. Pl.'s Br. at 15. The ALJ, however, sent two separate letters to Dr. Sharma requesting documents. R. at 61-63; 20 C.F.R. § 416.912(d)(1). In addition, Plaintiff's representative stated to the ALJ at the hearing that Dr. Sharma's office had virtually nothing on record regarding Plaintiff. R. at 37. If Plaintiff wanted the ALJ to issue a subpoena to Dr. Sharma, then Plaintiff should have made this request to the ALJ during the hearing or beforehand.

For the reasons set forth above, the Court finds that the ALJ rendered a decision based upon substantial evidence in the record in determining that Plaintiff was not disabled. Accordingly, Plaintiff's appeal is denied.

### III. CONCLUSION

For the reasons stated herein, Plaintiff's appeal is denied. An appropriate form of Order accompanies this Memorandum Opinion.

Dated: August 3, 2006

                                                     s/ Garrett E. Brown, Jr.
                                                     GARRETT E. BROWN, JR., U.S.D.J.